JAMA A. WHITE *vs.* PORTIA LAW SCHOOL & others.

Suffolk.    November 12, 1930. — January 7, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Law School.    Contract,* Construction, Performance and breach.    *Equity Pleading and Practice,* Master.

In a suit in equity by a woman for damages and for her reinstatement as a student in a law school for women conducted by the defendant, a corporation authorized to furnish a course of instruction in law of not less than four years and to grant degrees to students properly accredited and recommended by a majority of the faculty, the plaintiff alleged that she had contracted with the defendant for four years' instruction and that she had been expelled from the school without reason.    A master found that the defendant required annual registrations and tuition fees;  that the plaintiff was enrolled as a student in the school for three successive school years, her scholastic record being high;  that, during the third year, the plaintiff purchased coal and other supplies from dealers without informing the dealers that she was living apart from her husband and that he had been ordered by a probate court to make her certain monthly payments for her support;  that such supplies were far beyond her needs;  that she failed to make payment therefor;  that she brought apparently groundless actions for malicious prosecution and slander;  that she boasted to her fellow students that legal principles learned at the school enabled her to get the supplies free;  that, upon her conduct coming to the attention of the defendant's officers, they interviewed her and gave her an opportunity to explain her conduct;  that she informed them that she did not intend to pay for the supplies, but regarded them as necessaries, the obligation to pay for which was her husband's and not hers;  that the conduct of the plaintiff was without justification;  that the defendant's officers thereafter refused to permit her to enroll in the school for her fourth year;  and that her continued presence at the school would be subversive of its discipline and would tend to harm its reputation and affect its power to graduate students of proper character.    A final decree was entered dismissing the bill. *Held,* that

(1) The facts found by the master warranted his finding that the continued presence of the plaintiff in the defendant's school would be harmful to it;

(2) There was no error in the final decree.

A party to a suit in equity having filed objections to a master's report on the ground that he had made rulings of law, an interlocutory decree confirming the report was proper where there appeared to be no

ruling of law in the report which was not required to be made by the master in the determination of the admissibility of evidence, and that such rulings were not erroneous.

A motion to discharge a reference to a master in a suit in equity is addressed to the discretion of the judge who hears the motion.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on April 20, 1929, and afterwards amended, described in the opinion.

The suit was referred to a master, material facts found by whom are stated in the opinion. The plaintiff filed motions to discharge the reference to the master and exceptions to his report. By order of *Crosby,* J., an interlocutory decree was entered denying the plaintiff's motions and confirming the master's report. By order of *Sanderson,* J., a final decree was entered dismissing the bill. The plaintiff appealed from both decrees.

The case was submitted on briefs.

*J. J. Irwin,* for the plaintiff.

*R. H. Willard & M. J. Mulkern,* for the defendants.

PIERCE, J. This is a bill in equity wherein the plaintiff charges that on September 1, 1926, being then registered as a regular student in the defendant Portia Law School, a private corporation, she was expelled from said school without any reason and without a hearing. The plaintiff prays (1) that the defendants be ordered to reinstate her; (2) that she be awarded damages in the sum of $20,000; and (3) "for such further orders and decrees as to this honored court may seem meet and equity and justice may require."

The answer admits the allegations in the bill that the defendants are residents of this Commonwealth; that the Portia Law School is a corporation organized under the laws of Massachusetts and has its office and principal place of business at Boston; that by its charter it is granted the power to confer the degree of bachelor of laws; that in September, 1923, the plaintiff inquired of the dean regarding the requirements for entrance in said law school; that she was duly informed respecting the same, and thereafter was accepted by the school as a regular student in

the day division for the school year commencing in September, 1923, and ending in the spring of 1924; that the plaintiff paid the required sums of money for instruction during that period of time; and that on or about September 1, 1926, the Portia Law School declined to accept the plaintiff as a student for the school year commencing September, 1926, and ending in the spring of 1927.

The defendants deny, as charged in the bill, that the Portia Law School, through its officers, agreed that, after completing the four-year course at the school and necessary subjects in the Everett Evening High School, it would grant a degree of bachelor of laws; that during the period of time the plaintiff was a student of said school she was subjected to unfair discrimination and criticism by the law school or by its servants and agents; that the defendants maliciously concocted, schemed and devised certain false charges against the plaintiff without a reason and without a hearing; and that the plaintiff was expelled from said school. But they admit that the law school refused to enroll the plaintiff for the school year commencing in September, 1926. The defendants deny all allegations in the bill not specifically admitted, and further answer that the plaintiff was informed of and knew the reason or reasons for the refusal to enroll her as a student for such further period. and that no request for a hearing was made by the plaintiff.

The further answer of the defendants, that the plaintiff has not stated in her bill such a cause as entitles her to relief in equity, that the bill as amended is multifarious, that the plaintiff is barred by laches and by the statute of frauds, and that the plaintiff has a full, complete and adequate remedy at law, is in legal effect a demurrer, which is not pressed before this court.

The cause was referred to a master to hear the parties and their evidence, to find the facts and to report the same to the court. The report which was duly filed, and confirmed by an interlocutory decree, covers twenty-nine printed pages; the plaintiff's exceptions thereto six printed pages; motion and supplementary motion to discharge

reference, and offer of proof of further reasons in support
of motion to discharge reference, eleven pages. A final
decree was entered dismissing the bill with costs. The
cause is before this court on the appeals of the plaintiff
from the interlocutory and final decrees.

The evidence which was taken before the master is
not reported, and there is nothing in the report to show
that the plaintiff took exception to the admission or ex-
clusion of such testimony. The master finds as follows:
The institution now known as Portia Law School was
founded as a private enterprise in December, 1908, by
the defendant MacLean. In 1918 it was incorporated as
an educational institution under the then existing provi-
sions of the Revised Laws. Under Spec. St. 1919, c. 219,
§ 1, it was incorporated under the name of the Portia Law
School and was empowered to take over the property of
the corporation known as the Portia Law School. Sec-
tion 2 provides: "The purpose of the said corporation
shall be to furnish instruction in law to women only, and
for this purpose it may appoint such teachers and lec-
turers and adopt such form of organization, by-laws, regu-
lations and methods of administration as it may deem
advisable . . . ." By § 3, "The course of instruction fur-
nished by the corporation shall occupy not less than four
years, and to students of the school, properly accredited
and recommended by a majority of the faculty of the
school, the corporation may grant the degree of Bachelor
of Laws." Under St. 1926, c. 161, the school was given
authority to confer the degree of master of laws upon
both men and women completing the described course
for degree of master of laws who already possessed the
degree of bachelor of laws from institutions authorized
to confer that degree and the degree of master of laws.
The catalogues of the school for the year 1923, and for
the succeeding years concerned in these proceedings, pro-
vided for the payment of an enrollment fee annually by
each student at the time of registration at the beginning
of each scholastic year and that the amount of the fee be
credited by the school on account of the annual tuition

charges. The catalogues for each of the scholastic years the plaintiff attended the school contained the statement that "over three hundred women students mark the School as comprising the largest number of women law students ever enrolled at one time in any institution for the pursuance of a complete law school curriculum," and the plaintiff relied upon that statement and upon the fact that her name appears as a regular student with her class at the end of the catalogues for each of the scholastic years to establish between her and the Portia Law School a contract for four years of legal instruction. The plaintiff was enrolled and registered as a regular student in the Portia Law School for the years 1923–1924, 1924–1925 and 1925–1926, her enrollment and registration taking place at the beginning of each scholastic year. In addition to her work at the law school she attended the Everett Evening High School for three successive years while she was a student at Portia Law School and her scholarship record at the Portia Law School during this time was of a high order.

The master further finds that sometime before April, 1926, the law school authorities received information to the effect that the plaintiff was making improper use of knowledge acquired in the school. There was a strong undercurrent of talk about the matter within the student body and more or less indignation expressed by certain students. The defendant Paige communicated this information to the dean without disclosing the name of the student concerned and the dean requested Miss Paige to make an investigation of the matter and report the facts to him. Miss Paige made an investigation and reported the result of her inquiries to the dean, at the time disclosing the name of the student in question, namely the plaintiff. The dean, after having investigated the conduct of the plaintiff upon the report of Miss Paige, sent for the plaintiff and in an interview with her lasting about fifteen minutes sought to elicit the truth about various rumors concerning her which had been "more or less cur-

rent gossip within certain of the student body of the school for some time and which the Dean had already investigated and more or less verified." He gave her an opportunity to explain and did not by any act or word seek to limit her opportunity of explanation or justification of her conduct. In the interview he spoke to her in general terms of information that had been brought to his attention as to conversations in which she had taken part in the presence of other students of the school with reference to her personal matters and personal litigation, and the uses to which she was apparently devoting legal knowledge acquired in the school. He directed her attention specifically to a claim of E. S. Morse & Company for coal delivered at her home, to a claim of S. S. Pierce Company for groceries and other articles delivered at her home, and to actions which she had instituted against the chief of police of the city of Everett. The plaintiff informed the dean that it was not her intention personally to pay for the groceries and other articles purchased of S. S. Pierce Company at the time she ordered them; that it was not her present intention personally to pay for them; that she regarded some of them as involuntary Christmas presents from her husband, from whom she was living apart, under a temporary order of the Probate Court that he should pay $32 on the third and eighteenth days of each month for her support. None of the facts with reference to her marital and financial relationship was disclosed to the S. S. Pierce Company when she obtained the credit account, and from December 5 until December 29, 1925, the purchases made " were in almost every instance vastly in excess of the usual and ordinary needs of a large household of substantial means living in impressive luxury." The plaintiff told the dean that she regarded the goods delivered by the company at her home as necessaries and that it was the obligation of her husband to pay the bill and not her obligation. As respects these purchases amounting to $517.43 and the purchase of coal by the plaintiff under circumstances which are set out in the report, the dean characterizes the defence the

plaintiff set up against the demand of the sellers for payment as being reprehensible and indefensible.

The master finds no justification in fact in the evidence before him, even in considerations of economic necessity, for the conduct of the plaintiff with reference to her dealings with S. S. Pierce Company and E. S. Morse & Company. He finds that the plaintiff is a woman of unusual mental attainments and fully capable of clearly understanding the character and quality of her acts; that her communications of these episodes to her fellow students in the manner in which she communicated them and her boast to fellow students that legal principles learned in the law school had enabled her to get groceries free, coal free and involuntary Christmas presents from her husband, and all her conduct in relation thereto, are not justified in fact by any explanation made before him by the plaintiff or by any evidence that was adduced in these proceedings; and that the lawsuits for malicious prosecution and slander, brought by the plaintiff against the chief of police of Everett, were "apparently groundless and could not have been brought in good faith, good conscience or good judgment."

It appears in the report that the committee of the Portia Law School which had charge of disciplinary matters with reference to students, including expulsion from or rejection by the school, did not meet in joint session upon the case of the plaintiff, but it also appears that the final decision of the dean as disclosed in his letter to the plaintiff, dated September 1, 1926, "was expressive of the wishes and decision in the matter of all of the members of the committee on degree requirements."

A careful examination of the record does not disclose that any exception to the admission of evidence at the hearing before the master was taken by the plaintiff. However, we have examined and compared each one of the several exceptions and the twenty-five specifications relating thereto, and find nothing in them which does not relate to facts found or inferred by the master upon evidence not reported. The facts found warranted the

master in finding that the continued presence of the plaintiff at the Portia Law School would be subversive of the discipline of the school, would tend to cast a shadow upon the reputation of the institution, and consequently would affect its power to graduate pupils imbued with good principles and impressed with high ideals of the profession of the law.

We find no rulings of law in the report which were not required to be made by the master in the determinations of the admissibility of evidence, and so far as it is possible to separate the findings of fact and the rulings of law we find no error in the rulings of law.

The motions to discharge the master were addressed to the sound discretion of the single justice and there is nothing in the record to indicate an abuse thereof. We find no errors in the conduct of the hearings or in the denials of the several motions, which called for the discharge of the master or for a reversal of the several decrees.

*Decrees affirmed.*